UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY BRISCO,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL,<br><br>  Defendant. | Case No. 4:16-cv-01843-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 19 |

Plaintiff Michael Anthony Brisco seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion for summary judgment, and REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

## I. BACKGROUND

On October 14, 2011, Plaintiff Michael Anthony Brisco filed concurrent applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income Benefits. Administrative Record ("AR") 20. Plaintiff alleges a disability onset date of September 26, 2011. AR 20. Plaintiff's claims were initially denied on February 1, 2012, and upon reconsideration on January 16, 2013. AR 20. Plaintiff filed a Request for Hearing on March 4, 2013. AR 210-211. A hearing was held before Administrative Law Judge Nancy Lisewski on May 21, 2014. AR 20.

Plaintiff is fifty-seven years old, and has never been married. AR 275. Plaintiff is a high

school graduate, and earned a certificate as a "computer office specialist" from Southwest College. AR 611. In 1994, Plaintiff began working as a dishwasher at Baywood Court, a retirement home in Castro Valley. AR 323. He performed a variety of tasks including: cleaning and sanitizing all chinaware, tray-line equipment, dish room and dish machine. *Id.* On October 31, 2003, Plaintiff became injured and was unable to continue his job role. *Id.* He was given a modified work role with lighter duty. *Id.* He remained at Baywood until May 15, 2007, when he was released due to his inability to keep up with his modified position due to his work related injury. *Id.*

Plaintiff previously filed for social security disability benefits, but was found not disabled in a final decision by an ALJ in 2009, based on applications filed on October 15, 2007. AR 20. Here, the ALJ found that Plaintiff successfully rebutted the presumption of continuing nondisability under the *Chavez* Acquiescence Ruling, by showing "changed circumstances" affecting the issue of disability during the unadjudicated period. AR 20. Specifically, the ALJ found that new evidence shows that Plaintiff's medically determinable impairments have worsened since the prior decision. AR 21.

The records show that Plaintiff has a history of epicondylitis, left ulnar neuropathy, and bilateral rotator cuff tendonitis. *See, e.g.,* AR 30, AR 430. In 2002, Plaintiff underwent a right lateral epicondylitis release, which provided him with a complete restoration of function. AR 430. In 2003, Plaintiff began to complain of left shoulder and left elbow pain. AR 431. He initiated a workers' compensation claim, and he began receiving treatments from workers' compensation physician Kenneth Kim, M.D. AR 394-436. Dr. Kim provided medication management and other conservative treatments. Plaintiff received left lateral epicondyle injections and he attended physical therapy. AR 428, AR 432. Plaintiff's pain medications were discontinued in February 2009 after he tested positive for cocaine. AR 439.

In August 2010, Plaintiff returned to Dr. Kim for treatment of bilateral upper extremity pain, which was worse in his left upper extremity. AR 438-439. Plaintiff's oral medications were restarted. AR 444. Soon after, in October 2010, Plaintiff alleged that his medication was not effective, and his medications were switched. AR 508-509. In 2011, Plaintiff saw Dr. Kim approximately once per month. AR 471-514. Physical examinations between August 29, 2011

and October 24, 2011 revealed that Plaintiff had a slowed gait, decreased range of motion in his cervical spine, tenderness to palpation of his paracervical muscles, and increasing numbness in his left arm. AR 471-480. Even so, Plaintiff had a full range of motion of his elbows bilaterally. AR 472. Plaintiff admitted that his medications were "working well." AR 479. Plaintiff was referred to physical therapy for his neck and bilateral upper extremities. AR 473.

In a letter dated September 26, 2011, Dr. Kim opined that Plaintiff "suffers from medical conditions that have resulted in permanent disability" and that he is unable to "tolerate work in the open labor market due to his chronic permanent disability." AR 469-470. Dr. Kim did not identify the specific clinical or diagnostic findings or specific functional limitations that prevented Plaintiff from working. *See id.* On October 24, 2011, Dr. Kim opined that Plaintiff's work status was permanent and stationary, which means that, in the context of workers' compensation law, he had reached the maximum medical improvement. AR 31 n. 4, 473.

On December 13, 2011, Plaintiff underwent an orthopedic medical evaluation, performed by Steven S. Isono, M.D., in connection with his workers' compensation case. AR 31, 515-535. Dr. Isono was an "Agreed Medical Evaluator," who is a neutral examining physician. AR 31 n. 5. Plaintiff's chief complaints were pain in his left shoulder, left sternoclavicular joint, left elbow, right shoulder, and right elbow. AR 519. Plaintiff complained of numbness and tingling in his fingers. *Id.* Dr. Isono's examination revealed that Plaintiff had positive Tinel's signs bilaterally in his wrists and elbows; he had medial and lateral epicondylar tenderness bilaterally; impingement sign was positive in his shoulders bilaterally; and cross-arm test was positive bilaterally. AR 520-522. Plaintiff had full range of motion in his elbows. AR 520. Dr. Isono concluded that Plaintiff had not reached the position of maximal medical improvement, and recommended that he undergo additional treatment and evaluation. AR 523, 525. Dr. Isono recommended that Plaintiff undergo MRI scans, as they would be useful in determining Plaintiff's disability status, and requested that he be able to personally review the scans, so that he may issue a supplemental report. AR 525.

In a Permanent and Stationary Report, dated January 3, 2012, prepared in connection with his workers' compensation claim, Dr. Kim deemed Plaintiff "permanent and stationary." AR 578-581. Plaintiff continued seeing Dr. Kim for conservative treatment. AR 32.

3

On July 17, 2012, an electromyogram study of Plaintiff's bilateral upper extremities established that he had left sided ulnar neuropathy across his elbow segment. AR 718. An MRI scan of Plaintiff's left shoulder, dated August 1, 2012, revealed evidence suggestive of subacromion impingement with rotator cuff tendinosis and biceps tenosynovitis of the biceps; and mild osteoarthritis of the glenohumeral joint. AR 595. An MRI of Plaintiff's right shoulder performed the same day demonstrated evidence suggestive of subacromial impingement with edema at the musculotendinous junction of the supraspinatus; biceps tenosynovitis with interstitial tear; degenerative fraying of the posterior labrum with a focal area of labral tear; and infraspinatus tendinosis and articular-sided partial tear overlying the bare area. AR 598.

On July 19, 2012, Dr. Kim completed a residual functional capacity evaluation. AR 590-593. Therein, Dr. Kim opined that Plaintiff could only stand for one hour, sit upright for two hours without pain, and that he could lift and carry less than five pounds frequently. AR 591-592. Dr. Kim further opined that Plaintiff could rarely reach above his shoulder level, handle, or finger; and could frequently reach at and below waist level, and feel. AR 591. An MRI of Plaintiff's left elbow from August 2, 2012, revealed that he had a partial thickness tear at the origin of the common extensor tendon; and that there was a focal area of osteochondral lesion on the lateral articular surface of the trochlea. AR 599.

Since the prior decision, Plaintiff has been diagnosed with depression. AR 24. On December 9, 2012, Plaintiff underwent a psychological examination performed by Deepa Abraham, Ph.D. AR 24, AR 609-620. Plaintiff's chief mental complaint was depression. AR 610. Dr. Abraham observed that Plaintiff initially appeared dysthymic, but warmed up as the session progressed. AR 613. Plaintiff began to tear up when discussing the death of his former girlfriend, but also cracked jokes and laughed. *Id.* Dr. Abraham observed that his short term memory was slightly impaired, and that his personal and social judgment was impaired, but, nonetheless, his thought content, speech, orientation, long term memory, and concentration were normal. *Id.* Dr. Abraham administered the Wechsler Adult Intelligence Scale-IV (WAIS-IV), which revealed a full scale IQ of 67 (borderline intellectual range), but that the score should be interpreted with caution, because he approached the tests apathetically, such that his performance "most likely

reflects low motivation, lack of sustained effort, lethargy as a result of his depressive disorder." AR 615. Dr. Abraham formally diagnosed Plaintiff with Pain Disorder Associated with Both Psychological Factor and a General Medical Condition, Chronic, and Cocaine Abuse. AR 617. She further opined that Plaintiff's physical condition sustains his depression, and recommended that he seek psychotherapy treatment and additional treatment to determine a suitable medication intervention. AR 618. She also recommended that Plaintiff consider "twelve-step treatment in conjunction with therapy in order to cope with his tendency to abuse illegal substances." *Id.* Dr. Abraham assigned Plaintiff a Global Assessment of Function ("GAF") score of 40.

Dr. Abraham opined that Plaintiff would have difficulty competing for jobs in an open labor market due to his chronic pain and depression, which would be expected to impair his ability to carry out complex work assignments and maintain concentration and attention. AR 619. She indicated that Plaintiff would have difficulty performing heavy labor, including carrying heavy objects, bending, and standing, due to lack of strength. *Id.* Dr. Abraham, however, believed that Plaintiff was capable of performing simple tasks that do not require him to carry heavy objects for extended lengths of time. *Id.* Dr. Abraham found that Plaintiff's "congenial and cooperative disposition" would allow him to accept instructions from supervisors and interact appropriately with the public and coworkers. *Id.* Dr. Abraham noted that Plaintiff may have difficulty coping with daily or the usual stresses encountered in a competitive work environment, and that he would have difficulty adapting to changes in tasks or responsibilities because of his issues with chronic pain. *Id.*

On November 1, 2013, Plaintiff underwent a consultative psychological examination performed by Aparna Dixit, Psy.D. AR 737-744. Plaintiff's chief psychological complaints were depression, bipolar disorder, and anxiety. AR 737. Dr. Dixit observed that Plaintiff's mood and affect were dysthymic. AR 738. Dr. Dixit observed that Plaintiff was able to perform simple mathematical calculations, interpret the meaning of a commonly used English proverb, and that his thought process was organized, coherent, linear, and goal directed. *Id.* Dr. Dixit administered WAIS-IV, the Wechsler Memory Scale-IV (WMS-IV), and the Trail Making Test (TMT), which revealed a full scale IQ of 82 (low average range). AR 739. Plaintiff's scores on the WMS-IV also

fell within the low average range, indicating that he has a mildly compromised auditory and visual working memory. AR 739. Plaintiff's scores on the TMT indicated that his ability to organize, sequence, and perform tasks requiring mental flexibility is mildly impaired. *Id.* Dr. Dixit opined that Plaintiff was unimpaired in his ability to understand, remember, and carry out simple instructions, in his ability to maintain attention, concentration, pace and persistence throughout the current evaluation, and in his ability to endure the stress of the current interview. *Id.* Dr. Dixit diagnosed Plaintiff with Depressive Disorder NOS, assigned Plaintiff a GAF score of 61, and noted that his prognosis was good. *Id.*

On November 22, 2013, Plaintiff underwent a consultative orthopedic evaluation performed by Omar C. Bayne, M.D. AR 745-755. Plaintiff's chief complaints were bilateral shoulder pain, right elbow pain, and left elbow pain and numbness. AR 745. Dr. Bayne diagnosed Plaintiff with chronic recurrent right lateral epicondylitis status post right epicondylitis release; left ulnar nerve neuropathy at the left cubital fossa, awaiting left ulnar nerve transfer; and bilateral rotator cuff tendonitis with impingement worse on the right than the left. AR 747-748. Dr. Bayne opined that Plaintiff could perform less than a full range of light exertional work; he should be able to lift and carry 10 pounds frequently and 20 pounds occasionally; he could occasionally reach and work with both hands above shoulder level; and he could occasionally grip, grasp, push, and pull with the bilateral upper extremities. AR 748.

In February 2014, Dr. Kim noted that Plaintiff's medication allowed him to live independently, and that he was stable on his current medication regimen, as it has not changed in more than six months. AR 769-770. Dr. Kim also stated that Plaintiff's function and activities of daily living have "improved optimally on current doses of medication." AR 770.

On April 23, 2014, Plaintiff underwent another psychological evaluation, which was paid for by Plaintiff's representative. AR 25, 800-808. The unsigned report appears to have been prepared by Lesleigh Franklin, Ph.D. *See ids.* Dr. Franklin's examination revealed that Plaintiff was impaired on formal measures of attention, but that he could retain short strings of information; his memory was impaired; and his mood was depressed. AR 802. Dr. Franklin further opined that his fund of knowledge, intelligence, and abstraction were below normal. *Id.* Dr. Franklin noted

that Plaintiff's concentration, speech, affect, and thought content were normal. *Id.* Dr. Franklin administered the Wechsler Abbreviated Scale of Intelligence (WASI), which revealed a full scale IQ of 68 (extremely low range). AR 802. Dr. Franklin diagnosed Plaintiff with major depressive disorder, severe, without psychotic features; panic disorder with agoraphobia; unspecified anxiety disorder; and borderline intellectual functioning. AR 805. She opined that Plaintiff's GAF suggests he has "moderate difficulty in social, academic and occupational functioning." AR 805. Dr. Franklin further opined that Plaintiff would have mild limitation in his ability to accept instruction and respond appropriately to criticism from supervisions, and that he had no limitation in his ability to maintain regular attendance and be punctual within customary, usually strict tolerances. AR 808. Dr. Franklin recommended that Plaintiff attend psychotherapy sessions and receive a psychiatric medication evaluation. AR 806.

On May 12, 2014, Dr. Kim completed a "Medical Opinion Re: Ability to do Work Related Activities." AR 809-812. Therein, Dr. Kim opined that Plaintiff could perform less than a full range of sedentary exertional work. *See ids.* Dr. Kim further opined that, on average, Plaintiff's impairments would result in three or more absences from work per month and would interfere with his concentration and pace of work at least 50% of the time. AR 812.

In a decision dated June 11, 2014, the ALJ found that Plaintiff was not disabled. AR 20-37. On August 6, 2014, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 14-16. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on February 12, 2016. AR 1-6. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

On November 14, 2016, Plaintiff filed his motion for summary judgment. (Pl.'s Mot., Dkt. No. 18.). On December 9, 2016, Defendant filed its opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 19.) On January 23, 2017 Plaintiff filed a reply. (Pl.'s Reply, Dkt. No. 22.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial

evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the

burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012. AR 23.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since September 26, 2011, the alleged onset date. AR 23.

At step two, the ALJ found that Plaintiff had the following severe impairments: status post-epicondylitis release, left ulnar nerve neuropathy, and bilateral rotator cuff tendonitis. AR 23.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 27.

Before considering step four, the ALJ concluded that Plaintiff has the RFC to perform a range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) and SSR 83-10, as follows:

> the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; he can occasionally perform reaching and working with both hands above shoulder level; he can occasionally grip, grasp, push, and pull; he can frequently perform bilateral repetitive fingering, handling, wrist manipulation; he can frequently perform bilateral repetitive hand tasks; and he is precluded from exposure to unprotected heights.

AR 27.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. AR 35.

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 36. Therefore, Plaintiff was not disabled within the meaning of the Social Security Act. AR 37.

## IV. DISCUSSION

In his motion for summary judgment, Plaintiff argues that the ALJ erred in denying his application for social security benefits and the case should be remanded for payment of benefits or, alternatively, further proceedings because (1) the ALJ erred in evaluating the medical evidence; (2) the ALJ erred in determining Plaintiff's severe impairments; (3) the ALJ erred in determining that Plaintiff does not meet or equal a listed impairment; (4) the ALJ erred in determining Plaintiff's residual functional capacity ("RFC"); and (5) the ALJ erred in evaluating Plaintiff's credibility.

### A. Evaluation of Medical Evidence

Plaintiff argues that the ALJ improperly weighed the medical evidence by assigning little weight to the opinion of the treating source, assigning greater weight to the consultative examiners, and assigning little weight to examining psychologists. (Pl.'s Mot. at 4, 8, 12.) Conversely, Defendant argues that the ALJ properly evaluated the medical evidence. (Def.'s Opp'n at 4.)

In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes among the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The three types are classified as (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Id.* A treating Physician's opinion is entitled to controlling weight if it is well supported and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor and, if contradicted, only for specific and legitimate reasons supported by substantial evidence. *Chater,* 81 F.3d at 830. Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is accepted as true. *Id.* at 834.

In the instant case, the ALJ assigned little weight to Dr. Kim's opinions, significant weight to the opinions of Drs. Bayne and Dixit, and minimal weight to Drs. Abraham and Franklin. AR 26, 34.

### i. ALJ failed to provide specific and legitimate reasons for assigning little weight to Dr. Kim's opinion.

Since Dr. Kim's opinion is contradicted by orthopedic consultative examiner Dr. Bayne, the ALJ must provide specific and legitimate reasons for rejecting the opinion of the treating physician. *See Lester*, 81 F.3d at 830-31.

Dr. Kim began treating Plaintiff in January 22, 2008.[1] AR 421. While the ALJ did not err in rejecting the September 26, 2011 disability statement, as it was conclusory and completely devoid of substantive information, the ALJ did not provide specific and legitimate reasons to give little weight to Dr. Kim's other opinions, including Plaintiff's RFC.

For example, the ALJ conclusively stated that "[i]t appears that Dr. Kim relied quite heavily upon the claimant's subjective allegations as many of the exertional and postural limitations are not supported by objective clinical and diagnostic findings contained in the longitudinal treatment notes." AR 34. Upon review of the administrative record, Dr. Kim's opinion is supported by objective findings, treatment notes, and Plaintiff's subjective complaints. *See, e.g.,* AR 409-410, 439-440. The Court notes that Dr. Kim had the benefit of reviewing imaging studies, while Dr. Bayne's report clearly stated that there were no x-rays or MRI studies for him to review. *See* AR 717-718, 747. As a result, the ALJ erred in stating, without explanation, that Dr. Bayne's opinion was "well supported by the electrodiagnostic, x-ray, and MRI findings contained in the longitudinal treatment notes" when Dr. Bayne did not consider any diagnostic imaging when rendering his medical opinion. AR 34. In fact, the ALJ does not cite to any medical source who reviewed the imaging results other than Dr. Kim.

Accordingly, the ALJ failed to give specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician.

---

[1] The undersigned notes that Dr. Kim treated Plaintiff in connection with his workers' compensation case. Plaintiff argues that this is not a legitimate basis for rejecting a medical opinion absent other evidence. (Pl.'s Mot. at 7.) The Court agrees. *See Lester,* 81 F.3d at 832. Here, the Court notes that Dr. Kim provided consistent treatment to Plaintiff as his treating physician, as there is no indication that Plaintiff obtained medical treatment elsewhere. Notwithstanding, while the ALJ noted that some medical records were related to Plaintiff's workers' compensation claim, there is no indication that the ALJ considered this to be a legitimate basis for discounting Dr. Kim's medical opinion. Thus, the undersigned finds that there was no error.

####            ii.     ALJ erred in assigning great weight to examining physician Dr. Bayne.

As discussed above, the ALJ assigned great weight to examining orthopedist Dr. Bayne because his opinion was well supported by diagnostic imaging and the longitudinal treatment notes. *See* discussion *supra* Part IV.A.i.  Dr. Bayne, however, did not evaluate any diagnostic imaging, because they were unavailable. AR 747.  While Dr. Bayne may have performed a physical examination, he did not have the benefit of reviewing the MRI and other imaging that Dr. Kim ordered and reviewed.

Accordingly, the ALJ erred in assigning great weight to Dr. Bayne's medical opinion. On remand, another consultative examination should be performed, and the examiner shall have access to all of the imaging studies.

####            iii.    ALJ did not err in assigning great weight to examining psychologist's position, and assigning little weight to Drs. Abraham and Franklin.

Plaintiff contends that the ALJ erred in assigning great weight to psychological consultative examiner Dr. Dixit's opinion. (Pl.'s Mot. at 9.) The Court disagrees. Here, the ALJ notes that Plaintiff underwent three psychological examinations. AR 24-26.  The ALJ then discussed and gave little weight to the opinions of Drs. Abraham and Franklin, in part, because Plaintiff underwent these additional examinations to obtain benefits rather than treat his symptoms. AR 26.  While discounting medical opinions based wholly on being obtained for the purposes of litigation is improper, the ALJ did not do that.  Instead, the ALJ determined that the limitations assessed were not supported by the findings from the mental health examinations in the record and inconsistent with Plaintiff's lack of treatment, and that Drs. Abraham and Franklin appeared to advocate for Plaintiff rather than provide an impartial assessment. AR 26-27.

The ALJ's consideration of lack of treatment was also not in error. Despite undergoing three psychological evaluations, in which each examiner referred Plaintiff for mental health treatment, Plaintiff did not pursue mental health treatment even though he was receiving extensive medical treatment for his physical ailments.  Given that two additional evaluations were paid for by Plaintiff's representative, Plaintiff's depression diagnosis is well documented, and this is clearly not a situation where the claimant did not have access to mental health services or was

unaware of the severity of his mental impairment. *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (ALJ improperly rejected the medical opinion diagnosing claimant with affective disorder because claimant did not seek mental health treatment prior to that diagnosis). Here, unlike in *Nguyen*, the ALJ did not completely reject these opinions. She merely assigned them less weight.

Despite Plaintiff's protestations to the contrary, the ALJ did not err in assigning great weight to Dr. Dixit's opinion because she was the "outlier," because her opinion was more consistent with Plaintiff's ability to perform numerous activities of daily living without assistance. (*See* Pl.'s Mot. at 10, 14; AR 26.) Thus, Plaintiff's argument that the similarity in full scale IQ scores from Drs. Abraham and Franklin render Dr. Dixit's score invalid, is unavailing. (Pl.'s Mot. at 14.) Additionally, the opinions of Drs. Abraham and Franklin concede that Plaintiff's limitations are not as severe as his full scale IQ suggests. Specifically, while Dr. Abraham's administration revealed a full scale IQ of 67 (borderline intellectual range), she cautioned that the score may not be accurate and his poor performance "most likely reflects low motivation, lack of sustained effort, lethargy as a result of his depressive disorder." AR 615. She further opined that his ability to have "functioned independently for his entire adult life and [that he has] helped raise two children[] contradicts [] his overall IQ score." AR 615. Similarly, Dr. Franklin opined that Plaintiff's "low cognitive scores do not appear to have impacted his adaptive functioning." AR 806. As a result, the ALJ properly assigned less weight to the opinions of Drs. Abraham and Franklin because the limitations assessed were "inconsistent with his current level of adaptive functioning." AR 27. Their respective reports tend to agree with that finding. The ALJ's role is to evaluate the medical opinions and resolve any differences in opinion, which is what she did.

In light of the foregoing, the ALJ did not err in assigning great weight to Dr. Dixit's opinion and affording little weight to the opinions of Drs. Abraham and Franklin.

**B.     Whether the ALJ erred in determining Plaintiff's severe impairments.**

Plaintiff contends that the ALJ erred by failing to include depression as a severe impairment. (Pl.'s Mot. at 15.) At step two, an ALJ determines whether a plaintiff has a medically severe impairment or combination of impairments. This determination "is a de minimis screening

13

device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), superseded by statute on other grounds by 20 C.F.R. § 404.1529(c)(3). The Social Security Rulings and Regulations discuss the severity determination in terms of what is "not severe." *Id.* An impairment, or combination of impairments, is not severe "if it does not significantly limit [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522; see also SSR 85-28. "Basic work activities" means "the abilities and aptitudes necessary to do most jobs," including: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290.

Here, Dr. Dixit opined that Plaintiff's depression indicated mild symptoms or limitations. AR 25. While the undersigned found that the ALJ properly assigned Dr. Dixit's opinion great weight in relation to the opinions of Drs. Abraham and Franklin, the medical record suggests that the impact is more than de minimus, particularly given Plaintiff's physical limitations. The record is replete with reports that his symptoms adversely affect his ability to function from virtually every medical professional he has encountered.

Accordingly, the ALJ's failure to consider Plaintiff's depression as a severe impairment requires that the case be remanded.

### C. Meet or Equal Listed Impairment

At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the criteria of listings in 20 C.F.R. §§ 416.920, 416.925 and 416.926. AR 27. Plaintiff argues that, "having failed to properly consider the requirements of 12.04 and 12.06 at Step Two," the ALJ erred in determining whether Plaintiff met the criteria for an immediate award of benefits. (Pl.'s Mot. at 18.) In light of the ALJ's error at step two, and the improper weighing of the medical evidence, the Court remands the case to Step Three for a new determination that takes into account

that Plaintiff's depression constitutes a severe impairment and his physical limitations.

### D. Determination of Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence and failed to consider all of Plaintiff's non-exertional limitations due to the improper weighing of evidence. (Pl.'s Mot. at 20.) Given the ALJ's improper weighing of the medical evidence pertaining to Plaintiff's physical and mental limitations, the Court agrees.

A claimant's RFC is what the claimant is capable of doing despite his or her mental and physical limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The ALJ must consider all relevant evidence in formulating an RFC, and "an RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690. The ALJ's findings may be set aside if not supported by substantial evidence. *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002); *Smolen*, 80 F.3d at 1279. An ALJ may omit limitations arising out of a claimant's subjective complaints only if the subjective complaints have been properly discredited. *See Lingenfelter*, 504 F.3d at 1040-41 (RFC excluding subjective limitations was not supported by substantial evidence where the ALJ did not provide clear and convincing reasons for discrediting claimant's testimony).

The ALJ's improper weighing of the medical evidence affected her RFC determination, because she omitted several limitations. As a result, the ALJ's RFC determination was flawed, because it failed to include all of Plaintiff's limitations, which necessitates remanding the case for further proceedings, which shall include a new consultative examination, as discussed above. *See* discussion *supra* Part IV.A.ii.

### E. Plaintiff's Credibility

Here, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility by failing to consider the entire case record and provide clear and convincing reasons for her finding. (Pl.'s Mot. at 23.) Defendant contends the ALJ provided specific reasons supported by substantial

evidence to discount Plaintiff's credibility. (Def.'s Mot. at 16.)

In evaluating a claimant's testimony regarding subjective pain or other symptoms, an ALJ must engage in a two-step inquiry. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). An ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations and citations omitted). At this step, a claimant need not show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation and citations omitted). Next, if a claimant meets this first prong and there is no evidence of malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting a claimant's testimony about the severity of her symptoms. *Id.*

As to the first prong, the ALJ found that Plaintiff's underlying impairments could reasonably be expected to cause the alleged symptoms. AR 30. As to the second prong, the ALJ rejected Plaintiff's statements and testimony about the severity of his symptoms, finding that they were not credible to the extent that they were inconsistent with the RFC assessment. *Id.*

The Court notes that SSR 96-7p has since been superseded by SSR 16-3p (2016), which eliminated the term "credibility" to clarify that symptom evaluation was not a character analysis. Rather,

> assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, No. 15-16277, 2017 WL 4053751, at *9 n. 5 (9th Cir. Sept. 14, 2017)(citing SSR 16–3p (2016)).

In light of the case being remanded, the Court declines to consider Plaintiff's credibility under the old standard, and directs the ALJ to reevaluate Plaintiff's subjective allegations of pain under SSR 16-3p.

///

16

## V. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment, and REMANDS this action to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: September 29, 2017

KANDIS A. WESTMORE
United States Magistrate Judge